E-FILED
Thursday, 31 October, 2019 12:22:15 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD A. JOHNSON, | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) No.: 19-cv-4148-JBM |
| | ) |
| CHRISTINE BRANNON, et al., | ) |
| | ) |
| **Defendants.** | ) |

## MERIT REVIEW ORDER

Plaintiff, proceeding *pro se* files an action under 42 U.S.C. § 1983 alleging deliberate indifference to his serious mental health needs and a violation of due process at the East Moline Correctional Center ("EMCC"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "'state a claim for relief that is plausible on its face.'" *Alexander v. U.S.,* 721 F.3d 418, 422 (7th Cir. 2013)(quoted cite omitted). While the pleading standard does not require "detailed factual allegations", it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Plaintiff has filed a lengthy, confusing complaint, pleading a history of depression and anxiety. Plaintiff indicates that during a prior term of incarceration at the Illinois Department of Corrections ("IDOC"), he was broke brutally raped by a staff member. After his release, Plaintiff developed a drug addiction and, at some point, was arrested and convicted for the unauthorized use of a weapon. When he was evaluated for "TASC" probation (Treatment

1

Alternatives for Safe Communities), it was recommended that he undergo treatment, though it is not clear whether this was mental health treatment, substance abuse treatment, or both.

Plaintiff was subsequently sentenced to a second term in IDOC, presumably due to the weapons conviction. He was originally to be placed in a treatment program at Sheridan Correctional Center, based on the TASC recommendation. It appears, however, that there was a lack of bed space at Sheridan and Plaintiff was sent to Pontiac. Plaintiff subsequently grieved the Pontiac placement, asserting that it is a medium/maximum security facility and he was evaluated as only a minimum security risk. Plaintiff was later transferred to EMCC, a minimum security facility, which does not have a treatment program. Plaintiff complains that he has not yet been placed in a treatment program, that it takes two years to complete such a program, and that he has only two years remaining on his sentence.

Despite revealing a history of only depression and anxiety, Plaintiff claims that he has been hearing voices telling him to kill others and believes others are trying to kill him. He claims that he needs a treatment program so he will be functional when released from custody. This is particularly important as a treatment program would provide him post-release services including help in securing housing and employment, and other support services not particularly identified.

Plaintiff asserts that Defendant Genisio, a caseworker supervisor, has wrongfully postponed his transfer to another facility based on a disciplinary charge he received. Plaintiff explains that on May 4, 2019, he mistakenly entered the wrong room and was issued a disciplinary report for unauthorized movement. When Plaintiff subsequently approached Defendant Genisio regarding a transfer, Defendant told him he would not be eligible for 90 days, due to the disciplinary ticket.

Plaintiff has grieved the issue of the 90-day transfer restriction and demanded that Defendant Genisio and Defendant Huton, a counselor, produce the policy which authorizes this. Plaintiff asserts that Defendants have either provided "less than competent" responses or have failed to respond altogether.

On May 12, 2019, Plaintiff went before the Adjustment Committee for hearing on the disciplinary ticket. Plaintiff was found guilty and sentenced to seven days of unit restrictions. Plaintiff asserts that, as the Adjustment Committee did not impose a 90-day restriction on his transfer to another facility, Defendant Genisio wrongfully, and without due process, imposed this penalty. Plaintiff also implicates the EMCC Chief Administrative Officer ("CAO") Brannon, asserting that Defendant Brannon wrongfully affirmed the transfer restriction. Plaintiff asserts that Defendants' actions were in violation of Ill.Admin.Code §504.20, which does not include transfer restriction as one of the penalties which may be imposed by the Adjustment Committee.

Plaintiff also makes a vague claim that his current incarceration prevents "good time" which is assumed to be the accumulation of good time credits against his sentence. It is not clear, however, and Plaintiff does not affirmatively state, that if he were placed in a treatment program, he would have the ability to earn good time credits not available to him at EMCC.

Plaintiff makes an additional claim against Defendant Flores, a mental health worker, asserting that she was deliberately indifferent to his serious mental health needs. Plaintiff alleges that on June 25, 2019, he told Sergeant Burgess, not a party, that he needed unspecified mental health intervention. Sergeant Burgess informed Defendant Flores who did not see him that day and, perhaps, did not see him at all. Plaintiff asserts that Defendant is the only mental health provider for 1300 inmates. He also appears to implicate Defendant Brannon in the alleged failure to provide mental health treatment.

**ANALYSIS**

Plaintiff's claims regarding the failure to provide a prison transfer are reviewed under the Due Process clause of the Fourteenth Amendment, rather than under the Eighth Amendment. *See Walker v. Gardner*, No. 16-297-, 2016 WL 6581870, at *1 (W.D. Wis. Nov. 4, 2016) (the failure to transfer prisoner for drug treatment did not allege a deprivation of "the minimal civilized measures of life's necessities" so as to state an Eighth Amendment claim). It has been clearly established that inmates generally do not have a due process interest as to prison transfers. *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated"). A constitutionally protected liberty interest may be at issue, however, if Plaintiff is subjected to conditions at one prison, which represent an atypical and significant hardship. *Sandin v. Conner*, 515 U.S. 472, 487 (1995).

Here, however, Plaintiff does not complain of prison conditions at EMCC, only the lack of a treatment program. Prisoners do not, however, have a "liberty interest in rehabilitative or educational programs offered while in prison." *Walker*, 2016 WL 6581870, at *2 citing *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). *See also, Long v. Wondra*, No. 12-647, 2013 WL 12098999, at *5 (W.D. Wis. Sept. 16, 2013), *aff'd,* 553 Fed. Appx. 637 (7th Cir. 2014) (plaintiff's request for transfer to particular prison to receive treatment denied as not implicating a liberty interest). This is so, even if "the successful completion of such a program might result in early release from custody." *Id.*

Plaintiff states a colorable claim, however, that Defendant Flores was deliberately indifferent to his serious mental health needs on June 25, 2019, when she refused to see him. This claim will proceed. Plaintiff's allegations of deliberate indifference against Defendant

Brannon appear based on her position as the CAO rather than own personal participation in the alleged violation. Section 1983 limits liability to public employees "for their own misdeeds, and not for anyone else's." *Burks v. Raemisch,* 555 F.3d 592, 595–96 (7th Cir.2009). Section 1983 liability is predicated on fault, so to be liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir.2001) (quoting *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir.2001)). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Ames v. Randle,* 933 F.Supp.2d 1028, 1037–38 (N.D.Ill.2013) (quoting *Sanville,* 266 F.3d at 740). Plaintiff fails to state a deliberate indifference claim as to Defendant Brannon but will be given leave to amend.

Plaintiff's allegations that Defendants Genisio and Huton did not properly respond to his grievances, also fails to state a claim. This is so as, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1995).

**IT IS THEREFORE ORDERED:**

1.  This case shall proceed solely on the claims of deliberate indifference against Defendant Flores identified herein. Plaintiff will be given an opportunity, within 30 days, to replead his deliberate indifference claim against Defendant, Brandon, should he wish. If Plaintiff files an amended complaint it must stand complete on its own, without reference to a prior pleading. It is to be captioned as an amended complaint and is to include all his claims against all Defendants. Plaintiff's due process claim for the restrictions on his prison transfer and claim that he did not receive proper responses to his grievances are DISMISSED for failure to state a claim. All other claims will not be included in the case, except in the Court's discretion upon

motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15. Defendants Brannon, Genisio and Huton are DISMISSED.

2. Plaintiff files [5], a motion for recruitment of *pro bono* counsel but does not indicate that he attempted to secure counsel on his own. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). [5] is DENIED at this time. In the event that Plaintiff renews his motion for appointment of counsel, he is to provide copies of the letters sent to, and received from, prospective counsel.

3. The Clerk is directed to send Defendant pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

4. If Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5. Defendant shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

6. Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

7. Once counsel has appeared for a Defendant, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

8. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

9. Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; AND,

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

ENTERED: 10/31/2019

_____s/Joe Billy McDade_____
JOE BILLY McDADE
UNITED STATES DISTRICT JUDGE